# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THERESA S. WATTS,

     Plaintiff,

v.

YOUTH FINANCIAL LITERACY
FOUNDATION d/b/a UNITED
CREDIT EDUCATION SERVICES,

     Defendant.

CIVIL COMPLAINT

CASE NO. 2:26-cv-12656

DEMAND FOR JURY TRIAL

## COMPLAINT

NOW comes THERESA S. WATTS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of YOUTH FINANCIAL LITERACY FOUNDATION d/b/a UNITED CREDIT EDUCATION SERVICES ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* and the New Jersey Consumer Fraud Act ("CFA") under N.J. Stat. Ann. § 56:8-1 *et seq.,* stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

1

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within the Eastern District of Michigan and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Eastern District of Michigan.

## PARTIES

4.  Plaintiff is a consumer over 18 years of age residing in Ewing, New Jersey.

5.  Defendant is a credit repair organization offering services designed and represented as a means to improve consumers' credit. Defendant is a purported non-profit entity organized under the laws of the state of Michigan with its principal place of business located at 37735 Enterprise Court, Suite 600, Farmington Hills, Michigan 48331.

6.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

2

7. Several years ago, Plaintiff was looking to improve her credit rating and began looking into credit repair and other options for assistance.

8. Plaintiff subsequently happened upon Defendant in approximately August of 2021

9. It was represented to Plaintiff that Defendant would provide assistance to Plaintiff in getting items removed from her credit report by helping Plaintiff dispute information with the credit reporting agencies and that, as a result, her credit score would improve when such derogatory information was removed.

10. Defendant affirmatively represented that the desired negative information would be removed from Plaintiff's credit report as a result of its services, and that it would deliver results within a few months of Plaintiff signing up with Defendant.

11. Defendant further represented that it would be able to remove information from Plaintiff's credit reports regardless of whether that information was accurate or could otherwise properly be removed through credit disputes.

12. Plaintiff subsequently agreed to use Defendant's services.

13. Upon information and belief, Defendant directed Plaintiff to various terms and conditions, although never required Plaintiff to sign any sort of contract prior to Defendant providing its services.

14. Upon further information and belief, such unexplained and glossed over terms and conditions suggested that Defendant was a 501(c)(3) organization, and was therefore exempt from a variety of laws, including the CROA.

15. However, upon information and belief, at the time Plaintiff signed up with Defendant (and over the intervening years) Defendant was not, in fact, acting as a "non-profit" corporation, despite its purported 501(c)(3) status.

16. Instead, and upon information and belief, Defendant was and has been operating primarily as a means to provide unlawful and misrepresented credit repair services to consumers so as to in turn provide bloated pay packages to employees or directors, including over $500,000.00 in annual compensation, while further funneling clients' funds to various third party affiliate and service providers.

17. Therefore, and upon information and belief, Defendant was and has been attempting to utilize its 501(c)(3) status to avoid application of otherwise applicable laws, including the CROA, *inter alia.*

18. Plaintiff made an upfront payment to Defendant before Defendant performed any services for Plaintiff, followed by a $90 monthly fee thereafter.

19. Plaintiff persisted in making his payments to Defendant for approximately a year.

20. Despite Plaintiff making his payments, Defendant failed to deliver any of the results it represented would be delivered.

4

21. While Defendant affirmatively represented that Plaintiff's credit score would improve as a result of using Defendant's services, Plaintiff's credit score did not improve as represented by Defendant.

22. While Defendant provided Plaintiff letters for her to dispute her debts herself, such disputes were generally ineffective and ultimately did not result in the removal of information from Plaintiff's credit report.

23. Plaintiff eventually cancelled his services with Defendant after months of payments as he could no longer afford paying almost $100 per month for no credit improvement.

24. Notwithstanding Plaintiff's cancellation of Defendant's services, Defendant failed to refund Plaintiff for payments made in connection with services Defendant failed to completely perform for Plaintiff.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, denial of the benefit of her bargain, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a.  Violations of CROA §§ 1679b(a)(3)-(4)

30. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

6

31. Defendant violated the above provisions of the CROA through its generally deceptive business practices through which it purports to be a nonprofit organization. The CROA exempts nonprofit organizations that *actually operate as nonprofit organizations.* Defendant holds itself out as being a 501(c)(3) nonprofit organization, and would therefore be exempt from the CROA *if it operated as a nonprofit organization,* which it does not. Instead, it's "nonprofit" services were designed to created and resulted in the creation of bloated pay packages for its employees and directors or to otherwise result in funds being diverted to various third-party for-profit affiliates.

32. Defendant further violated the above-referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant represented to Plaintiff that Defendant's services would result in negative items being removed from her credit report and that Plaintiff's credit would improve. However, Defendant failed to follow through on the full extent of promises or the services it represented it would perform for Plaintiff. Rather than negative items being removed from her credit reports, Defendant's services failed to remove such debts. As a result of such failures, Plaintiff's credit score did not improve in the manner Defendant represented and suggested. Upon information and belief, Defendant actively misrepresents the nature and efficacy of its services so as to make them more

appealing than they actually are which, in turn, is designed to get consumers to agree to use services and remit payment under a false belief that results will be forthcoming.

33. Defendant violated the above provisions of the CROA through its deceptive representations regarding the timeframe within which results would be delivered. Defendant represented that results would be delivered within a few months and that Plaintiff would have debts removed from her credit reports within this time. Despite Plaintiff's maintenance of payments, Defendant's services failed to deliver any meaningful results within the represented time frame.

34. Defendant further violated the above provisions of the CROA through its general misrepresentations regarding the parameters of its dispute capabilities and the information that could reasonably be challenged and removed from Plaintiff's credit reports through Defendant's disputes. Defendant represented and suggested to Plaintiff that it would be able to remove any information from Plaintiff's credit reports, regardless of whether it was inaccurate, obsolete, or otherwise could be removed from Plaintiff's credit. This is an inherently deceptive and misleading representation, as only inaccurate or obsolete information can be removed from consumers' credit profiles. Defendant misrepresented the information it could have removed in order to convince Plaintiff it could remove the information that was harming his credit and convince him to use Defendant's services, despite knowing

the extent to which it could not reasonably have the extent of desired information removed from Plaintiff's credit.

### b.  Violations of CROA § 1679b(b)

35. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

36. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Despite Plaintiff paying Defendant for various services, Defendant failed to perform the services it represented it would perform while simultaneously retaining Plaintiff's payments for fees it ultimately never performed. Throughout the life of the parties' dealings, Defendant retained payments in connection with services that were not completely performed.

### c.  Violations of CROA § 1679c

37. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the various disclosures that credit repair organizations must provide to consumers prior to contracting with consumers.

38. Defendant violated the above provisions of the CROA through its failure to provide the requisite disclosures in the manner required by the CROA.

9

### d. Violations of CROA § 1679d

39. The CROA, pursuant to 15 U.S.C. § 1679d, outlines the requires for credit repair organization contracts, further requiring services to be provided pursuant to a signed, dated, and written contract containing certain material terms.

40. Defendant violated the above provision through its contracting processes which do not meet the CROA's requirements.

### e. Violation of CROA § 1679f(b)

41. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

42. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded under the CROA through its terms and conditions. Defendant's contract generally seeks to disclaim the entire applicability of the CROA. Defendant further seeks to use its illusory nonprofit status to constitute a waiver of Plaintiff's CROA rights, which is in further violation of the CROA.

43. Defendant's conduct in this regard further illustrates the void and unenforceable nature of the agreement between the parties. 15 U.S.C. § 1679f(c).

10

WHEREFORE, Plaintiff, THERESA S. WATTS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT

44. Plaintiff repeats and realleges paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff is a "person" as defined by N.J. Stat. § 56:8-1(d).

46. Defendant is a "person" as defined by N.J. Stat. § 56:8-1(d).

47. The transaction(s) between the parties constitutes the "sale" of "merchandise" as defined in N.J. Stat. §§ 56:8-1(e), (c).

48. The CFA provides that, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any

merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . ." N.J. Stat. § 56:8-2.

49. Defendant violated the CFA in much the same way Defendant violated § 1679b(a)(3)-(4) of the CROA.

WHEREFORE, Plaintiff, THERESA S. WATTS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under N.J. Stat. § 56:8-19;

c. Awarding Plaintiff costs and reasonable attorney fees as provided under N.J. Stat. § 56:8-19;

d. Enjoining Defendant from continuing to engage in violations of the aforementioned statute, as provided under N.J. Stat. § 56:8-8; and,

e. Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: July 31, 2026                                    Respectfully submitted,

s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Michigan Bar No. P82149
Counsel for Plaintiff
Admitted in the State Bar of Michigan
Admitted in the Eastern District of Michigan

Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com